MARY ANN JACKSON, RESPONDENT, *v.* BARNEY L. BROOKINS, LEVI SNIDER AND ROSWELL MINARD, APPELLANTS.

*Civil damage act, chapter* 646 *of* 1873 — *who may bring action under* — *who may be joined as defendants.*

Any person may maintain an action, under chapter 646 of 1873, against the persons therein named, who is injured in person, property or means of support by any intoxicated person, or in consequence of such intoxication.

Where several persons become intoxicated and engage in an affray, in which one of them is killed, his widow may maintain an action against the persons who sold the liquor which caused the intoxication, to recover the damages sustained by her from the death of her husband.[*]

Under the act (chap. 646 of 1873) a joint action may be maintained against a landlord and his tenant.

A joint action will not lie, however, against two or more persons who, separately, at different times and at different places, have sold liquor to the same person, each quantity of liquor sold having contributed to produce the intoxication that caused the injury.

APPEAL from an order of the Allegany Special Term, over-ruling the demurrer of defendants to the complaint.

The action was brought under the " civil damage act," so called. (Chap. 646 of 1873.)

The complaint alleges that plaintiff was married to Charles Jackson, on June 13, 1866, and continued his wife until March 18, 1874, and is now his widow; that on the 17th of March, 1874, at Fillmore, in Allegany county, the defendant, Minard, sold and gave away strong and spirituous liquors to said Charles Jackson, Wil-

----

[*] See *Hayes* v. *Phelan*, 4 Hun, 733.—[REP.

liam Cary, David Cary, and others, in consequence whereof they all became intoxicated, and while so intoxicated, the defendant Snider, on said seventeenth of March, at Fillmore, sold and gave away strong and spirituous liquors to said Charles Jackson, the Carys, and others, which contributed in part to their intoxication; that the defendant Snider was the tenant of the defendant Brookins, who rented to said Snider the premises on which said strong and spirituous liquors were sold by Snider, knowing that the same were to be used for the sale of intoxicating liquors, and that Brookins did permit the sale of intoxicating liquors thereon. That while said Charles Jackson and others were intoxicated, as aforesaid, they engaged in an affray, and while so engaged, Jackson received from the hands of William or David Cary, or both, mortal wounds, from which he died, on the 18th of March, 1874. That during coverture said Charles provided for the support and maintenance of plaintiff, and she was entirely dependent on him therefor; and in consequence of his death she is destitute of means of support. That in consequence of the selling and giving away of the strong and spirituous liquors by the defendants, as aforesaid, and the permitting thereof by Brookins, the plaintiff has been injured in means of support to the amount of $5,000.

The defendants separately demurred, on the grounds, substantially, that the complaint did not state facts sufficient to constitute a cause of action against the defendants, jointly or separately; that several causes of action had been improperly united; that either defendant could not be sued jointly with the others, or with either of them.

*Hamilton Ward*, for the appellants.

*G. W. Harding*, for the respondent.

MERWIN, J.:

The appellants claim in this case: First, that the cause of action does not survive to the widow; second, that the statute does not cover damages arising from the *death* of a party; third, that Minard is not responsible for what Snider and Brookins did, or Snider and Brookins for what Minard did, and therefore a misjoinder of causes of action.

The statute says, every husband, wife, or other person, who shall be injured, shall have a right of action. The test is not whether plaintiff is wife or widow, or in any other particular capacity or relation, but whether *she is injured* in her person, property, or means of support. That being alleged, the pleading in that regard is good.

But it is said the complaint claims no damages, except such as are consequent upon the death of Charles Jackson; that by the common law no action was given for causing the death of a person, and that by the present statute it is not given by express terms or necessary implication. It is true the statute does not, in express terms, give the right of action upon the cause of death. It does not define the injuries meant to be covered, or enumerate them. It says, generally, "injuries to person, property, or means of support, in consequence of the intoxication of any person." If death ensues, as the natural and legitimate result of the intoxication, it is covered by the language of the statute. All injuries are covered that are consequent upon the intoxication. If death were excluded, then the minor and temporary injuries would be provided for, while the greatest and most permanent of all would be excluded. The statute should not be so construed. It admits of the other construction, and that is more consonant with its benign purposes. Its main object was to provide a remedy for cases, before remediless. Had it been confined to injuries to person and property, it might have been said, with some force, that only those injuries were meant to be covered, for which there was before then a remedy against the intoxicated person. (*Hayes* v. *Phelan*, 4 Hun, 733.) But when it provided for injuries to means of support, it made actionable a new class of injuries, without remedy at the common law, and unprovided for by any previous statute. The wrong consisted in the fact that the sellers of liquor shut their eyes to the condition, in person or family, of those to whom they sold. They dealt out an article which, under certain circumstances often liable to exist and to be known to the seller, would, without fail produce injury, and, perhaps, death. Carelessness and neglect, morally criminal, were shielded under the license law. For this wrong, the statute under consideration provided a remedy. Notice the classes of persons especially endowed with a right of action:

husband, wife, child, parent, guardian. When the statute provided that any of them might have a right of action for any injury to his or her means of support, in consequence of the intoxication of any one, is it reasonable that the legislature only meant to provide for such causes of action as, before then, already existed against the intoxicated person? It seems to me not; but that the main object was to provide a remedy for an evil entirely without remedy before. The law does not provide *how* the injury to the means of support must be produced, in order to be actionable, when it is in consequence of intoxication. It is therefore without limit in that respect. Can we, therefore, in the face of an allegation, as in this case, that the plaintiff has entirely lost her means of support in consequence of the intoxication, say that the statute should be construed to read as if it excepted cases of total loss by death? The propriety of making vendors of liquor liable to that extent, we do not consider; but the question is: What does the statute mean? The amount of damages recoverable, depends upon the circumstances and degree of criminality in each case, and will be determined, it is to be presumed, justly by the trial court. Neither is it an action, in any respect, by the representatives of a deceased person; but the question is: Has the plaintiff herself been injured in her means of support, in consequence of the intoxication? The manner of the injury is entirely immaterial, except as it may affect the question of damages.

As to the third point of the defense, we must first consider whether it can be raised by demurrer. The plaintiff insists it is a defect of parties, not within the remedy of demurrer by section 144 of the Code. Very likely it is not within subdivision 4, of that section, providing for the case of a defect of parties. But I think subdivision 5, providing that defendant may demur when several causes of action have been improperly united, is broad enough for the present case. (*Hess* v. *Buffalo and Niagara Falls R. R. Co.*, 29 Barb., 391; see also, *Baggott* v. *Boulger*, 2 Duer, 160; *Colegrove* v. *N. Y. and Harlem R. R. Co.*, 6 id., 382; *Wright* v. *Storrs*, 6 Bosw., 600; *Stannard* v. *Mattice*, 7 How., 4; *Fosgate* v. *Manuf. Co.*, 2 Kern., 580.)

We then come to the question, whether there is a misjoinder of causes of action. It must be conceded that a joint action will lie

against Brookins and Snider, the landlord and the tenant. There is not room for argument against this. They are considered as one for the purposes of suit, if the plaintiff so elects. The landlord cannot complain, for he can protect himself when he leases. But will a joint action lie against two or more persons, who, separately, at different times and different places, have sold liquor to the same person, each quantity of liquor contributing to produce the intoxication that caused the injury?

The complaint alleges the sale at different times, though on the same day, and at different places, for the one sale was alleged on premises of Brookins; and in the absence of such allegation as to Minard, we must assume the places different. The act does not, in terms, say a joint action will lie. It says, in substance, that every person injured in consequence of the intoxication, habitual or otherwise, of any one, shall have a right of action against any person or persons who shall cause the intoxication in whole or in part, for all damages sustained. It is claimed on the one side, that but one right of action is given for the whole aggregate intoxication, and that the design of the legislature was to make all persons who had contributed to the result, liable jointly and severally for all the damages, like the case of a tort, or of a crime where principals before the fact were equally liable with principals at the fact. On the other hand it may be said, that such a rule would work great injustice; that different sellers would act under different circumstances, and that each should be judged by the circumstances attending his own act, and not be responsible for the iniquity of others; that there is no way under the act to apportion the damages, and a comparatively innocent party would have to pay the exemplary damages justly imposed on some other defendant; that a man in one locality might be liable, without remedy or means of defense, for the act of some one else in a different locality.

We are cited to no reported case in point on either side. A manuscript opinion of Justice LAMONT is handed up, in case of *Culver* v. *Boyne et al.*, decided at Niagara Special Term, in December, 1874, holding, in a similar case, that there was a misjoinder.

The act is open to both constructions, and in order, by construction, to ascertain the meaning of the act, we may consider the ob-

ject sought to be attained, as well as the consequences of either construction.

In 1855 a prohibitory law was passed. This was repealed 1857, and an act passed to regulate the sale of liquors (chapter 628 of 1857.) This was amended in 1870, still, however, authorizing and regulating the sale. So that, in 1873, when the present act was passed, it was legal to sell liquor by license, or in larger quantities without license. Then the present act came in, not prohibiting the sale, but providing that sellers must look out for the consequences of their acts. As is said in *Baker* v. *Pope* (2 Hun, 557), the seller became bound by law to exercise judgment and discretion in making his sales, and if he failed in this respect he became liable for the consequences. The law said to dealers : You can legally sell, but if what you sell produces intoxication, in whole or in part, and consequent damage, you must pay; if you sell to anyone who is intoxicated, or who will use it to become so, you must take the risk of damage ; you can do the legal act, but you must do it in a proper manner. There is nothing to indicate that it was designed to have one dealer guarantee the acts of others. If this were so, no prudent man would sell at all, and this, beneficently perhaps, would amount to prohibition. The legislature, however, did not intend that. They provided for a joint action against the landlord and tenant, but failed to so provide in terms as against the others. If a joint action lies, then a party in Buffalo, who sells liquor with the exercise of due judgment and discretion, is liable for the acts of strangers in Albany and New York, who sell without such judgment, or even maliciously. I don't think the legislature intended any such result. But they did intend that each man or concern who sold liquor, should be liable for his own acts. The act of sale is the basis of the action ; that is first to be proven; then the consequent intoxication and damage. If the original act is joint, then a joint action follows. The act which controls the form of the suit is the original act ; that is the only thing done by the defendant, from which the obligation flows. In the collision cases, cited by plaintiff's counsel (*Colegrove* v. *N. Y. and N. H. R. R. Co.*, 20 N. Y., 492; *Barrett* v. *Third Ave. R. R. Co.*, 45 id., 628 ; *Webster* v. *Hud. Riv. R. R. Co.*, 38 id., 260), the tortious act causing the injury was

FOURTH DEPARTMENT, OCTOBER TERM, 1875:

joint, and the parties to it liable both jointly and severally. These do not reach plaintiff's case.

My conclusion is, a joint action will not lie upon the facts stated in the complaint; that a cause of action is stated against Minard alone, and another against Snider and Brookins, and that they cannot be joined. Whether more than one action will lie in favor of plaintiff, we are not called on to decide.

The order should be reversed, and the demurrer sustained.

Present — SMITH, P. J., GILBERT and MERWIN, JJ.

So ordered, with leave to plaintiff to amend, on payment of costs.